IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 15-cv-00316-WYD-CBS

DUN-RITE HOME IMPROVEMENTS, INC., *a Colorado corporation*,

        Plaintiff,

v.

DUN-RITE, LLC, *a Colorado limited liability company*, and
JOSE HENRIQUEZ, *an individual*,

        Defendants.

---

RECOMMENDATION REGARDING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT

---

Magistrate Judge Shaffer

     This civil action comes before the court on Plaintiff Dun-Rite Home Improvement Inc.'s Motion for Default Judgment [Doc. 22] dated May 21, 2015. Neither Defendant has filed a response to the present motion. The Motion was referred to the Magistrate Judge by Order of Reference [Doc. 25] dated August 14, 2015. The court has reviewed the Motion, the exhibits and affidavits, the entire case file, the applicable law and is sufficiently advised in the premises.

## STATEMENT OF THE CASE

     Plaintiff Dun-Rite Home Improvement, Inc. ("Dun-Rite Home") filed its Complaint against Defendant Jose Henriquez and Defendant Dun-Rite, LLC on February 13, 2015, alleging federal and state law claims of trademark infringement and unfair competition. Plaintiff seeks attorneys' fees and costs in addition to permanent injunctive relief. Both Defendants were served on February 17, 2015; neither Defendant has answered or entered an appearance in this matter.

Thereafter, Plaintiff moved for default, which was entered by the Clerk of Court on March 30, 2015. [Doc. 17]. Plaintiff now moves for default judgment pursuant to Fed. R. Civ. P. 55(b).

Plaintiff Dun-Rite Home is a Colorado corporation that has provided home improvement services throughout Colorado since 1985. [Doc. 1 at ¶¶ 2, 8]. Plaintiff owns the Colorado trademark "DUN-RITE," as well as various Colorado trade names that incorporate this mark. *Id.* at ¶ 9; *see* [Doc. 1-1]. Additionally, Dun-Rite Home has been accredited by the Better Business Bureau since 1991 and has an A+ rating. [Doc. 1 at ¶ 13]; *see* [Doc. 1-3]. The company has invested millions of dollars to "develop, promote, and maintain" the DUN-RITE mark. [Doc. 1 at ¶ 11]. Dun-Rite Home markets its services on the Internet website "dunritekitchens.com," has purchased radio advertisements for many years, and includes DUN-RITE on various promotional items, such as direct mailers and business cards. *Id.* at ¶¶ 10-11. The company does not have a Facebook page. *Id.* at ¶ 10.

Defendant Dun-Rite, LLC is also a Colorado corporation that provides home improvement services within the Denver area. *Id.* at ¶ 14. Dun-Rite, LLC was formed on May 1, 2013, and Defendant Henriquez is listed as the registered agent. *Id.* In an effort to advertise their services in 2014, Defendants launched a Facebook page and registered an Internet website with the domain name "dunritedenver.com;" both the Facebook page and website use the DUN-RITE mark. *Id.* at ¶ 16. After learning of Defendants' use of DUN-RITE in connection with their home improvement services, Plaintiff sent a cease and desist letter to Defendant Henriquez on June 23, 2014. *Id.* at ¶ 19; *see* [Doc. 1-9]. Defendants did not respond. [Doc. 1 at ¶ 20]. In August 2014, Plaintiff's counsel telephoned Defendant Henriquez to resolve the dispute, but Defendant Henriquez refused to stop using DUN-RITE and the domain name. *Id.* at ¶ 20. Shortly thereafter, Plaintiff discovered two separate incidents where Defendants' use of DUN-RITE created

consumer confusion. *Id.* at ¶¶ 25-6. In one incident, a consumer who was attempting to contact Plaintiff found Defendants' phone number on the Internet and spoke with Defendant Henriquez. *Id.* at ¶ 26. During the conversation, Defendant Henriquez "represented that he was the Dun-Rite that advertises on the radio." *Id.* In another incident, Plaintiff received a call from a Colorado Springs customer who "expressed distrust in the company because the phone numbers and names on the Infringing Facebook Page did not match the contact information listed on [Dun-Rite Home's] website at <www.dunritekitchens.com>." *Id.* at ¶ 25.

On February 19, 2015, Plaintiff's counsel spoke with Defendant Henriquez and discussed the actions necessary to resolve the litigation, namely, transferring the domain name to Plaintiff and ceasing use of the DUN-RITE mark in his company name, Facebook page, and website. [Doc. 22 at 4]. On March 2, 2015, Defendant Henriquez changed the company name with the Colorado Secretary of State from "Dun-Rite, LLC" to "Henriquez LLC." *Id.* at 5. Meanwhile, Plaintiff submitted complaints to both Facebook and YP, LLC (the Yellow Pages company that hosts Defendants' website) regarding the infringing pages; as a result, both pages were disabled by March 2015. *Id.* Since that time, the website located at dunritedenver.com now posts an error message that reads "404 Oops! The Page you requested was not found! ©2015." *Id.* To date, Defendants refuse to transfer the domain name to Plaintiff. *Id.*

## STANDARD OF REVIEW

Pursuant to Rule 55(b), default judgment may enter against a party who fails to appear or otherwise defend a case brought against him or her. However, a party is not entitled to the entry of default judgment as a matter of right. *Greenwich Ins. Co. v. Daniel Law Firm*, 2008 WL 793606, at * 2 (D. Colo. Mar. 22, 2008) (quoting *Cablevision of S. Conn. Ltd. P'ship v. Smith*, 141 F. Supp. 2d 277, 281 (D. Conn. 2001)). Even after the entry of default, "it remains for the

court to consider whether the unchallenged facts constitute a legitimate basis for the entry of a judgment." *McCabe v. Campos*, 2008 WL 576245, at *2 (D. Colo. Feb. 28, 2008) (citing *Black v. Lane*, 22 F.3d 1395, 1407 (7th Cir. 1994)). "In determining whether a claim for relief has been established, the well-pleaded facts of the complaint are deemed true." *Id.* The decision whether to enter judgment by default is committed to the sound discretion of the district court. *Olcott v. Del. Flood Co.*, 327 F.3d 1115, 1124 (10th Cir. 2003).

## DISCUSSION

### A.    Subject Matter Jurisdiction, Personal Jurisdiction & Venue

In deciding whether the entry of default judgment is warranted, the court must first determine whether it has jurisdiction over the subject matter and the defendants. *Dennis Garberg & Assocs. v. Pack-Tech Int'l Corp.*, 115 F.3d 767, 772 (10th Cir. 1997); *Williams v. Life Sav. & Loan*, 802 F.2d 1200, 1202-03 (10th Cir. 1986). It is well-settled law that "[a] judgment is void when a court enters it lacking subject matter jurisdiction or jurisdiction over the parties." *Williams*, 802 F.2d at 1202.

Here, the allegations in the Complaint — taken as true — establish the court's jurisdiction over this lawsuit and the parties. This case arises under the Lanham Act, 15 U.S.C. §§ 1051 *et seq*. and the court, therefore, has subject matter jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. §§ 1338(a) and (b). The court has supplemental jurisdiction over Plaintiff's state law claims concerning deceptive trade practices, trademark infringement, and unfair competition.[1] *See* 28 U.S.C. § 1367(a).

In addition, according to the well-pleaded allegations in the Complaint, Defendant Dun-Rite, LLC is a Colorado limited liability company with its principal place of business in

---

[1] Plaintiff is not seeking default judgment for its deceptive trade practices claim (Count II), Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-101, *et. seq.*

Colorado. [Doc. 1 at ¶ 3]. Defendant Jose Henriquez is the registered agent of Dun-Rite, LLC and allegedly is a resident of Colorado. *Id.* at ¶ 4. The record shows that service on the Defendants was valid and effective (by personal service on Defendant Henriquez). [Docs. 10, 11]. Consequently, the court has personal jurisdiction over the Defendants.

Finally, because Dun-Rite, LLC is organized under the laws of Colorado, Defendant Henriquez is a resident of Colorado, and the alleged wrongful conduct occurred in the state of Colorado, the court finds that venue is proper in the District of Colorado under 28 U.S.C. § 1391.

**B.      Sufficiency of Plaintiff's Claims**

Plaintiff seeks default judgment against Defendants on its federal and state law claims of trademark infringement and unfair competition. By failing to answer the complaint, Defendants have relieved Plaintiff of the burden of proving its factual allegations supporting these claims. *United States v. Craighead*, 176 F. App'x 922, 924 (10th Cir. 2006). Nevertheless, "the court must determine whether the allegations contained in Plaintiff's Complaint are sufficient to state a claim for relief." *Jones v. Wells Fargo Bank, N.A.*, 2014 WL 3906297, at *8 (D. Colo. Aug. 7, 2014) (internal quotation marks and citations omitted). "To state a claim for relief, the Complaint must contain sufficient factual matter, accepted as true to show that the claim is plausible on its face." *Id.* (citations omitted). "A claim is facially plausible when the plaintiff pleads facts that allow the court to reasonably infer that the defendant is liable for the alleged conduct." *Id.*

1.      Unfair Competition in Violation of § 43(a) of Lanham Act

"Trademark infringement is a type of unfair competition; the two claims have virtually identical elements and are properly addressed together as an action brought under 15 U.S.C. § 1125(a)(1)(B), commonly known as section 43 of the Lanham Act." *Utah Lighthouse Ministry v. Found. for Apologetic Info. & Research*, 527 F.3d 1045, 1050 (10th Cir. 2008) (citing

*Donchez v. Coors Brewing Co.,* 392 F.3d 1211, 1219 (10th Cir.2004)). To prevail in an action for unfair competition under § 43(a), a plaintiff must establish that (1) the mark is protectable, and (2) the defendants' use of an identical or similar mark is likely to cause confusion among consumers. *Donchez*, 392 F.3d at 1215 (citing *Packman v. Chicago Tribune Co.*, 267 F.3d 628, 638 (7th Cir. 2001)). Here, the court concludes that the well-pleaded allegations support Plaintiff's claim that Defendants violated Section 43 of the Lanham Act.

Federal registration of a qualifying mark is not required for protection under § 43(a). *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992). Rather, in order to receive protection, a mark must be capable of distinguishing the products or services it marks from those of others. *Id.* Marks are classified in categories of increasing distinctiveness: generic, descriptive, suggestive, arbitrary, and fanciful. *Id.* A descriptive mark, which describes the features, qualities, or ingredients of a product or service in ordinary language, must have acquired a "secondary meaning" in the minds of the public in order to be eligible for protection. *Donchez,* 392 F.3d at 1216 (quoting *U.S. Search, LLC v. U.S. Search.com, Inc.*, 300 F.3d 517, 523 (4th Cir. 2002)). Conversely, "[f]anciful (made-up words expressly coined to serve as trade or service marks), arbitrary (common words applied in unfamiliar ways), and suggestive marks (words that connote, rather than describe, some quality or characteristic of a product or service) are inherently distinctive, and thus receive the greatest protection against infringement." *Id.*

A secondary meaning is acquired when the mark has been used "so long and exclusively with respect to the user's services that the purchasing public has come to understand the services are coming from a single source." *Metro Brokers, Inc. v. Tann*, 815 F. Supp. 377, 382 (D. Colo. 1993) (citation omitted). A plaintiff may establish secondary meaning through direct or circumstantial evidence. *Donchez,* 392 F.3d at 1218 (quoting *Flynn v. AK Peters, Ltd.*, 377 F.3d

13, 20 (1st Cir. 2004) (internal quotations omitted). Circumstantial evidence may include (1) the length and manner of Plaintiff's use, (2) the nature and extent of advertising and promotion of the mark, and (3) the efforts made in the direction of promoting a conscious connection, in the public's mind, between the mark and a particular product or venture. *Id.*

Here, Dun-Rite Home appears to argue that DUN-RITE is a descriptive mark with a secondary meaning because the mark has "become distinctive in the minds of consumers." [Doc. 1 at ¶ 29]. The court agrees. DUN-RITE qualifies as a descriptive mark because it describes the quality of Plaintiff's home improvement services. According to the facts alleged in the Complaint, Dun-Rite Home has used DUN-RITE in providing home improvement services within the state of Colorado since 1985, including the mark in all of its various trade names. *Id.* at ¶¶ 8, 11. Additionally, the company has been accredited by the Better Business Bureau since 1991 and has an A+ rating. [Doc. 1-3 at 2]. Moreover, DUN-RITE has been a registered Colorado state trademark since 1997. [Doc. 1-1 at 2]. Dun-Rite Home has invested millions of dollars to "develop, promote and maintain" the DUN-RITE mark through a marketing strategy that includes operating its own Internet website "dunritekitchens.com," purchasing radio advertisements for many years, and distributing promotional items, such as direct mailers. [Doc. 1 at ¶¶ 10-11]. Plaintiff's website and promotional materials include the slogan, "You have our word, we'll treat you right at Dun-Rite." [Doc. 1-2 at 2-4]. Because the facts alleged in the Complaint establish that DUN-RITE has acquired a secondary meaning, it is protectable under the Lanham Act.

Alternatively, the court notes that DUN-RITE might also be considered a fanciful mark, which has been defined as "made-up words expressly coined to serve as trade or service marks." *Donchez,* 392 F.3d at 1216 (quoting *U.S. Search, LLC v. U.S. Search.com, Inc.*, 300 F.3d 517,

523 (4th Cir. 2002)). The court in *Gennie Shifter, LLC. v. Lokar, Inc.*, 2010 WL 126181, at *10 (D. Colo. Jan. 12, 2010), found the mark "Lokar" (an adaptation of the words "low car") qualified as a fanciful mark when it was not found in any dictionary and lacked an alternate definition, other than to function as a trademark for Lokar's goods and services. Similarly, the DUN-RITE mark is an adaptation of the words "done right," it is not found in any dictionary, and it was invented for its use as a mark. Therefore, DUN-RITE may also be protectable as a fanciful mark.

Having concluded that Plaintiff's mark is protectable, the court must now consider whether Defendants' unauthorized use created a likelihood of confusion among consumers. 15 U.S.C. § 1125(a)(1)(A). The party alleging infringement has the burden of proving likelihood of confusion. *Australian Gold, Inc. v. Hatfield*, 436 F.3d 1228, 1238-39 (10th Cir. 2006). Likelihood of confusion is typically evaluated with six, non-exhaustive factors: (1) the degree of similarity between the marks; (2) the intent of the alleged infringer in using the mark; (3) evidence of actual confusion; (4) similarity of products and manner of marketing; (5) the degree of care likely to be exercised by purchasers; and (6) the strength or weakness of the mark. *Sally Beauty Co., Inc. v. Beautyco, Inc.*, 304 F.3d 964, 972 (10th Cir. 2002) (citing *King of the Mountain Sports, Inc. v. Chrysler Corp.*, 185 F.3d 1084, 1089-90 (10th Cir. 1999)). "These factors are interrelated and no one factor is dispositive." *Id.*

In testing the degree of similarity between marks, the court looks at sight, sound, and meaning. *Beer Nuts, Inc. v. Clover Club Foods Co.*, 711 F.2d 934, 940 (10th Cir. 1983) [hereinafter *Beer Nuts I*]. "Similarities should be given more weight than differences." *Jordache Enterprises, Inc. v. Hogg Wyld, Ltd.*, 828 F.2d 1482, 1485 (10th Cir. 1987). Here, Defendants' mark is identical to Plaintiff's mark. [Doc. 1 at ¶ 19]. Both parties use a mark that is comprised

of the same unique combination of letters coupled with a hyphen: "DUN-RITE." *Id.* at ¶¶ 9, 14. Moreover, the mark is a prominent feature in the trade names of Plaintiff and Defendants, "Dun-Rite Home Improvement Services, Inc." and "Dun-Rite, LLC," respectively. *Id.* Thus, the high degree of similarity between the marks increases the likelihood of confusion.

In determining the alleged infringer's intent, the proper focus is whether the defendant had the intent to derive benefit from the reputation or goodwill of the plaintiff. *Jordache*, 828 F.2d at 1485 (internal quotations omitted). Here, Defendants have been using DUN-RITE to market and provide their services in the Denver area since May 1, 2013, approximately 28 years after Plaintiff began doing business in Colorado using the DUN-RITE mark. *Id.* at ¶¶ 8, 14. Additionally, Defendants' limited marketing efforts are almost exclusively comprised of Internet advertising, while Plaintiff has employed a wide-ranging marketing strategy that incorporates radio advertisements, direct mailers, and other promotional items in addition to operating an Internet website. *Id.* at ¶¶ 10, 16-17. Furthermore, Defendants have misrepresented themselves to a consumer by saying that they were "the Dun-Rite that advertises on the radio." *Id.* at ¶ 26. It is clear from Defendants' actions that they used DUN-RITE in hopes of benefiting from Plaintiff's reputation.

Though not conclusive, actual confusion in the marketplace is often the best evidence of likelihood of confusion. *Universal Money Centers, Inc. v. Am. Tel. & Tel. Co.*, 22 F.3d 1527, 1534 (10th Cir. 1994). However, isolated instances of actual confusion may be dismissed as *de minimus*, especially when there is "substantial, reliable evidence… demonstrating no significant actual confusion in the marketplace." *Id.* (citation omitted). Here, the Complaint refers to two incidents where consumers notified Plaintiff that they had confused Dun-Rite, LLC for Dun-Rite Home Improvement Services, Inc. as a result of the information posted to the Internet by

Defendants. *Id.* at ¶¶ 24-26. Although Plaintiff only points to two instances of actual confusion in its Complaint, the Defendants did not present any contrary evidence. As a result, the court is unwilling to find the evidence of actual confusion to be *de minimus*.

A greater likelihood of confusion exists where there is greater similarity between the products [or services] and manner of marketing. *Sally Beauty Co., Inc.*, 304 F.3d at 974-75. "Confusing similarity is most likely when the products themselves are very similar." *Beer Nuts I*, 711 F.2d at 941 (citation omitted). Here, both Plaintiff and Defendants advertise their home improvement services on the Internet. [Docs. 1-2, 1-6]. While Defendants appear to offer a slightly broader range of services, the "Handyman Services" section of their website is virtually identical to the services listed on Plaintiff's website. *Id.* Additionally, Plaintiff's and Defendants' website domain names ("dunritekitchens.com" and "dunritedenver.com," respectively) both include the mark. [Doc. 1 at ¶¶ 10, 16]. The high degree of similarity in services offered by the two companies as well as their use of Internet marketing makes it probable that consumers would confuse Defendants' company for Plaintiff when seeking out home improvement services. Hence, this factor weighs in Plaintiff's favor.

A higher degree of care exercised at the time of purchase by consumers in selecting a product [or service] decreases the likelihood of confusion. *Heartsprings, Inc. v. Heartspring, Inc.*, 143 F.3d 550, 557 (10th Cir. 1998) (citation omitted). "[I]tems purchased on impulse are more likely to be confused than expensive items, which are typically chosen carefully." *Sally Beauty Co., Inc.*, 304 F.3d at 975 (citing *Beer Nuts, Inc. v. Clover Club Foods Co.*, 805 F.2d 920, 926 (10th Cir. 1986)). Here, the mark is used in commerce by two competing companies that offer home improvement services. *Id.* at ¶¶ 8, 14. The total cost of a home improvement service will vary depending on the nature of the job. However, a consumer is unlikely to impulsively

enter into a service contract of this kind considering the significant time and costs typically associated with its completion. Consequently, this factor weighs against a likelihood of confusion.

"The stronger the mark, the greater the likelihood that encroachment on the mark will cause confusion." *Id.* (citing *King of the Mountain Sports*, 185 F.3d at 1093). Here, Plaintiff has established that DUN-RITE is a distinctive mark because it has acquired a secondary meaning through Plaintiff's thirty years of continuous use and extensive marketing efforts, which associate DUN-RITE with Plaintiff's services. *Id.* at ¶ 12. Accordingly, DUN-RITE's distinctiveness supports a likelihood of confusion.

In sum, these factors evidence a strong likelihood of confusion in the marketplace concerning the source of home improvement services offered by these two competing companies. Therefore, Plaintiff has established that Defendants violated Section 43 of the Lanham Act.

2. <u>Common Law Trademark Infringement and Unfair Competition</u>

Plaintiff also asserts common law claims of trademark infringement and unfair competition. "The elements of common law trademark or service mark infringement are similar to those required to prove unfair competition under § 43(a) of the Lanham Act." *Donchez,* 392 F.3d at 1219. A plaintiff must establish "a protectable interest in its mark, the defendant's use of that mark in commerce, and the likelihood of consumer confusion." *Id.* Similarly, in situations where the defendant uses an identical or similar trademark or trade name as the plaintiff, the Colorado Supreme Court has provided a more specific test for unfair competition that requires a plaintiff to establish two elements: (1) the trade name acquired a secondary meaning or significance that identifies the plaintiff; and (2) the defendant must have unfairly used the name

or a simulation of it against the plaintiff. *HealthONE of Denver, Inc. v. UnitedHealth Group Inc.*, 805 F. Supp. 2d 1115, 1124 (D. Colo. 2011) (citing *Swart v. Mid-Continent Refrigerator Co.*, 145 Colo. 600, 604 (1961)). If the public is likely to be deceived by use of the same or similar name, it is unfair. *Gregg Homes, Inc. v. Gregg & Co. Builders*, 978 P.2d 146, 147 (Colo. App. 1998).

All of the elements required for Plaintiff's common law claims were previously addressed in the § 43(a) analysis. For the reasons discussed in the foregoing section, the court finds that DUN-RITE is protectable as a descriptive mark that has acquired a secondary meaning in the minds of the public. The court further concludes that Defendants' use of DUN-RITE in marketing and providing their home improvement services in the Denver area causes a likelihood of confusion among consumers. Therefore, the court finds that the well-pleaded allegations support Plaintiff's common law claims of trademark infringement and unfair competition.

**C.     Relief**

    1.  <u>Permanent Injunction</u>

Plaintiff seeks to permanently enjoin Defendants from making any present or future use of the DUN-RITE mark, including use of the Internet domain name "dunritedenver.com." "To obtain a permanent injunction, a plaintiff must show: '(1) actual success on the merits; (2) irreparable harm unless the injunction is issued; (3) the threatened injury outweighs the harm that the injunction may cause the opposing party; and (4) the injunction, if issued, will not adversely affect the public interest.'" *Kitchen v. Herbert*, 755 F.3d 1193, 1208 (10th Cir. 2014) (quoting *Sw. Stainless, LP v. Sappington*, 582 F.3d 1176, 1191 (10th Cir. 2009)). It is the movant's burden to demonstrate that each of these elements tips in his or her favor. *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1188-89 (10th Cir. 2003).

First, under the standards applicable to default judgment, the court finds that Plaintiff has succeeded on the merits of its trademark infringement and unfair competition claims. *See Olcott v. Delaware Food Co.*, 327 F.3d 1115, 1125 (10th Cir. 2003) (once default is entered, a defendant is deemed to have admitted the plaintiff's well-pleaded allegations of fact). Second, the court concludes that irreparable harm will occur if Defendants are not permanently enjoined from using the DUN-RITE mark or otherwise identifying themselves as being associated with DUN-RITE. Plaintiff faces the risk of lost business and weakened customer relations because Defendants are continuing to operate a home improvement business while using the DUN-RITE mark. Indeed, Plaintiff offered evidence of actual consumer confusion. *Big O Tires, Inc. v. Bigfoot 4X4, Inc.*, 167 F. Supp. 2d 1216, 1227 (D. Colo. 2001) ("In trademark cases, irreparable injury is ordinarily presumed once the plaintiff has established a likelihood of confusion."); *see also Times Mirror Magaznies, Inc. v. Las Vegas Sports News, L.L.C.*, 212 F.3d 157, 169 (3d Cir. 2000) ("[A] lack of control over the use of one's own mark amounts to irreparable harm."). Moreover, although Plaintiff had the infringing website disabled, Defendants still refuse to transfer the domain name "dunritedenver.com." Defendants' refusal to comply has created a situation where Plaintiff's potential customers will likely encounter the error message and believe that Plaintiff is no longer doing business. Third, the threatened injury to Plaintiff far outweighs the harm that the injunction would cause Defendants, who have no legal right to use DUN-RITE in their business or otherwise identify themselves as being associated with DUN-RITE. Finally, the issuance of an injunction will not adversely affect the public interest. To the contrary continued unauthorized use of the DUN-RITE mark by Defendants will certainly cause consumer confusion. Therefore, the court recommends that a permanent injunction be issued.

2.  Attorneys' Fees and Costs

Pursuant to 15 U.S.C. § 1117(a), Plaintiff is entitled to an award of its reasonable attorney fees and costs. Section 1117(a) provides in pertinent part that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." Although the statute does not define "exceptional," the Tenth Circuit has determined that "it occurs when a trademark infringement is malicious, fraudulent, deliberate, or willful." *United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 205 F.3d 1219, 1232 (10th Cir. 2000). "Acting 'willfully' means acting with knowledge that one's actions constitute . . . infringement." *Merchant Media, LLC v. H.S.M. Int'l*, 2006 WL 3479022, at *4 (S.D.N.Y. Nov. 30, 2006) (citing *Fitzgerald Pub. Co. v. Baylor Pub. Co.*, 807 F.2d 1110, 1115 (2d Cir. 1986)). In this case, Defendants continued to use DUN-RITE despite being advised by Plaintiff's counsel several times of the infringing nature of their conduct. [Doc. 1 at ¶¶ 19-20]. Although Defendant Henriquez eventually changed the company name with the Colorado Secretary of State from "Dun-Rite, LLC" to "Henriquez LLC," Defendants continued to represent itself as DUN-RITE on the Internet and refuse to transfer the domain name "dunritedenver.com" to Plaintiff. [Doc. 22 at 4-5]. In spite of repeatedly receiving notice of this action, Defendants have failed to appear and defend this action. Indeed, with full knowledge of this action, Defendants continued to utilize the DUN-RITE mark. Based upon this, the court concludes that Defendants' conduct was willful. Thus, the court may award reasonable attorneys' fees to Plaintiff.

To determine a reasonable fee award, the court will generally begin with a lodestar calculation. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). A lodestar calculation requires multiplying the number of attorney hours expended by a reasonable billing rate. *Id.* at 433. Similarly, the court applies the lodestar calculation to fees for services provided by non-lawyers,

if these fees were billed separately: multiplying reasonable hours by reasonable rates. *Case v. Unified Sch. Dist. No. 233, Johnson Cty., Kan.*, 157 F.3d 1243, 1249 (10th Cir. 1998).

The party seeking the award of attorney fees must demonstrate that the award is reasonable. *See Malloy v. Monahan*, 73 F.3d 1012, 1018 (10th Cir. 1996). "The district court has a corresponding obligation to exclude hours not reasonably expended from the calculation." *Id.* (quoting *Hensley*, 461 U.S. at 437) (internal quotation marks omitted). The applicant must exercise the same "billing judgment" as would be proper in setting fees for a paying client. *Hensley*, 461 U.S. at 436. "Billing judgment consists of winnowing the hours actually expended down to the hours reasonably expended." *Case*, 157 F. 3d at 1250 (citing *Ramos v. Lamm*, 713 F.2d 546, 553 (10th Cir. 1983), *overruled on other grounds by Penn. v. Del. Valley Citizens' Council for Clean Air*, 483 U.S. 711 (1987)). Hours that are "excessive, redundant, or otherwise unnecessary" should be excluded from a fee request. *Mares v. Credit Bureau of Raton*, 801 F.2d 1197, 1204 (10th Cir. 1986) (citation omitted). Generally, when attorneys bill for attending the same meeting or communicating with each other the court considers the entries to be duplicative. *See In re Mullins*, 84 F.3d 459, 467 (D.C. Cir. 1996) (deducting fees charged by the two lowest-billing attorneys where three attorneys billed for time spent attending a meeting together); *Robinson v. Plourde*, 717 F. Supp. 2d 1092, 1099 (D. Haw. 2010) (reducing fees where both attorneys billed for the same communications/meetings); *Bd. of Trustees of IBEW Local Union No. 100 Pension Trust Fund v. Porges*, 2013 WL 6596943, at *6 (E.D. Cal. Dec. 16, 2013) (finding "several entries in which two or more attorneys billed on the same day for emailing or otherwise communicating with their co-counsel" to be duplicative). Additionally, tasks that are easily delegable to non-professionals or less experienced associates should not be billed at a higher hourly rate. *New Mexico Citizens for Clean Air and Water v. Espanola Mercantile Co.*, 72

F.3d 830, 835 (10th Cir. 1996); *see also Ursic v. Bethlehem Mines*, 719 F.2d 670, 677 (3d Cir. 1983) ("Nor do we approve the wasteful use of highly skilled and highly priced talent for matters easily delegable … Routine tasks, if performed by senior partners in large firms, should not be billed at their usual rates."); *Xtreme Coil Drilling Corp. v. Encana Oil & Gas (USA), Inc.*, 958 F. Supp. 2d 1238, 1259 (D. Colo. 2013) (reducing partner fees by 10% after finding there was an "over-reliance on partners, rather than lower-cost associates, to prepare many aspects of the case" that was "not justified by the complexity of the case").

While Plaintiff's counsel exercised some billing judgment as evidenced by the fact that the billing statements provided to the court contain several entries for which no fee is assigned as well as a 10% "client courtesy discount," the court must still independently review the reasonableness of the fees actually requested. During this review, the court found hours included in the fee request that were "excessive, redundant, or otherwise unnecessary."[2] *Mares*, 801 F.2d at 1204. First, the February 2015 invoice includes four instances where the client was billed twice for a conversation or meeting between Ms. Strong and Ms. Kramer. [Doc. 30-3 at 2]. The court will account for the duplicative work by reducing the billable hours of Ms. Kramer, the lowest-billing attorney in this case:

---

[2] During the review, the court discovered some discrepancies in the documents attached to the Declaration of Gayle L. Strong in Support of Motion for Attorneys' Fees. The fourth month listed in the summary of fees appears to be mislabeled. [Doc. 30-1]. Exhibit A shows the last month of billable hours as September of 2015. However, the client invoices provided in Exhibit C indicate that August of 2015 was the last month any work was done on the present case. [Doc. 30-3]. Given that the hours listed in Exhibit A under September of 2015 are identical to the hours listed in Exhibit C under August of 2015, the court assumes this is a scrivener's error and that Plaintiff's counsel is referring to the same month. Additionally, the court notes the odd calculation errors included in Exhibit A for the third and fourth months listed. [Doc. 30-1]. The individual attorney fees for Gayle Strong and Amy Kramer are overstated. However, the total monthly fees for both months are correct, an outcome that appears to be the result of a deviation from Plaintiff's counsel's customary "client courtesy discount." The Declaration of Gayle L. Strong in Support of Motion for Attorneys' Fees states that the law firm's practice is to bill at a 10% fee reduction [Doc. 30 at ¶ 4], but the discount provided in the third and fourth month amounts to 13.7% and 51.1% of the total monthly fees, respectively. While curious, these errors do not affect the requested total amount of attorney fees, which is correctly stated in Exhibit A as $17,232.75.

| DATE | TIMEKEEPER | DESCRIPTION | HOURS | REVISED HOURS |
|---|---|---|---|---|
| 02/03/15 | ALK | "Communications with G. Strong re background of dispute and initial review of Dun-Rite LLC Facebook page and website in preparation for call with client." | 0.80 | 0.50 |
| 02/03/15 | GLS | "Review Facebook page and website; communications to A. Kramer regarding consideration of grounds of immediate irresponsible harm for TRO; prepare for client telephone conference." | 0.30 | 0.30 |
| 02/04/15 | ALK | "Review Colorado Secretary of State filings by Dun-Rite and infringer, facebook page and website of infringer, Dun-Rite's website, and Ms. Rosenblum's file with previous communications to infringer in preparation for call with client (1.3); telephone conference with G. Strong and client re background of litigation and strategy (0.7); office conference with G. Strong re strategy (0.3); communications with client re action items including litigation hold and log of consumer confusion (0.4); preliminary research re potential Colorado state law claims (0.7)." | 3.40 | 2.40 |
| 02/04/15 | GLS | "Review Ms. Rosenbloom's files regarding trademark dispute; telephone conference with Mr. Cechini regarding dispute, facts and preparation of complaint." | 1.50 | 1.50 |
| 02/05/15 | ALK | "Telephone conference with G. Strong and Thomas Allison re consumer confusion incident (0.3); communications with G. Strong re potential claims in complaint (0.2)." | 0.50 | 0.20 |
| 02/05/15 | GLS | "Telephone conference with Mr. Allison regarding incident of consumer confusion and misrepresentations by LLC infringer." | 0.30 | 0.30 |
| 02/11/15 | ALK | "Draft complaint against Dun-Rite LLC and Jose Henriquez (2.8); communications with S. Law re information for civil cover sheet (0.4)." | 3.20 | 2.80 |
| 02/11/15 | GLS | "Communications with A. Kramer regarding Complaint; draft civil cover sheet; communications with S. Law regarding USDC filing." | 0.30 | 0.30 |

Second, the billing statements indicate that Ms. Strong exclusively handled communications with Facebook and YP, LLC regarding Plaintiff's request to take-down the infringing website. [Doc. 30-3]. As a result, the client was charged 3 hours at the partner's hourly rate for these communications and corresponding status updates. *Id.* Trademark infringement

cases routinely involve the type of request made in this case, and the present facts do not justify a top-heavy allocation of work. Accordingly, these tasks should have been delegated to Ms. Kramer. Thus, the court will bill the 3 hours spent on these tasks at the associate rate instead of the partner rate.

Third, the billing statement for April and May of 2015 indicates that the client was charged 1.20 hours at the Research Coordinator's rate for research regarding default judgments and later charged 0.90 hours at the partner's rate for Ms. Strong's efforts to come up to speed on the law concerning the same. [Doc. 30-3 at 9]. Ms. Strong billed for the time she took to speak with the Research Coordinator about his findings in addition to independently reviewing the search results. *Id.* Ms. Strong's time seems excessive given her declaration to have "25 years of experience in trademark litigation matters." [Doc. 30 at ¶ 3]; *see Stover v. Riley*, 30 F. Supp. 2d 501, 504-05 (E.D. Pa. 1998) (finding excessive and reducing by one-third the time counsel spent doing research and document review after noting that counsel's affidavit demonstrated specialization in the substantive area of law raised by lawsuit); *Stone v. Deagle*, 2007 WL 4150298, at *4 (D. Colo. Nov. 19, 2007) (finding 3.2 hours of research on a motion to compel excessive given the attorney's "wealth of experience," which included practicing law for approximately 23 years and having prepared "hundreds of motions"). Consequently, the court will reduce the time Ms. Strong billed for research by one-third, resulting in 0.60 billable hours at the partner's hourly rate.

Finally, the February 2015 invoice shows that Ms. Kramer inappropriately billed the client for 0.40 hours at the associate's hourly rate to "assemble exhibits." Given that exhibit preparation does not require "highly skilled and highly priced talent," it is appropriately tasked to a paralegal. *Ursic*, 719 F.2d at 677. Therefore, this task will be charged at the paralegal rate.

Once the court has established what hours were reasonably expended on the litigation, it must determine the reasonable hourly rate for the attorneys and non-professionals whom worked on the case. A "reasonable rate" is the prevailing market rate in the relevant community for an attorney of similar experience. *Malloy v. Monahan*, 73 F.3d 1012, 1018 (10th Cir. 1996) (citing *Blum v. Stenson*, 465 U.S. 886, 895 (1984)). Fees for non-professionals must also be charged at a reasonable rate, evaluated in the same manner as hourly rates for attorneys. *Case*, 157 F.3d at 1249 (citing *Ramos*, 713 F.2d at 558-59).

The hourly rates of attorneys Gayle Strong and Amy Kramer ($535 and $395, respectively) are comparable to ones previously found reasonable in a patent infringement case, *Biax Corp. v. NVIDIA Corp., et. al*. 2013 WL 4051908, at *5-7 (D. Colo. Aug. 12, 2013). The *Biax* court was persuaded by defendants' reference to a 2010 National Law Journal billing survey that indicated "Denver firms billed between $285 and $810 per hour for partners and between $170 and $530 per hour for associates," a range which encompassed the three Denver-based partners' rates of $425, $530, and $585. *Id.* at *5-6. So, the court finds the hourly rates of both attorneys reasonable and will apply these rates in its lodestar calculation.

Conversely, the hourly rates of the paralegal Kevin Collins ($285), "Knowledge Solutions Research Analyst" Tamara Case ($185), and "Research Coordinator" Thomas Hannon ($185) are unreasonable because they are higher than the prevailing market rate for paralegals.[3] In determining a reasonable rate for paralegals, the court considers the case's complexity in addition to the billing rates of paralegals with similar skill and experience. *Xtreme*, 958 F. Supp.

---

[3] While the official titles of the three legal assistants vary (paralegal, "Knowledge Solutions Research Analyst," and "Research Coordinator"), all of their tasks fall within the scope of paralegal duties. *Clawson v. Mountain Coal Co., LLC*, 2007 WL 4225578, at *7 (D. Colo. Nov. 28, 2007) ("In *Jenkins* [491 U.S. 274, 288 (1989)], the Supreme Court justified awarding paralegal fees where the work performed by the paralegal is that which 'might otherwise be performed by a lawyer and billed at a higher rate.'") As a result, the prevailing market rate for paralegals in the Denver metropolitan area is used to analyze the hourly rate of each position.

2d at 1257 (finding that typical billing rates for paralegals working on "fairly straight-forward claim[s]" in the Denver metropolitan area approach $175 per hour). This district has approved a fairly wide range of reasonable paralegal rates in cases involving Lanham Act violations. *See Advanced Career Technologies, Inc. v. John Does 1-10*, 100 F. Supp. 3d 1105, 1110 (D. Colo. 2015) (finding that paralegal rates of $200 and $150 were reasonable in an action for violations of the Lanham Act, trade libel, and violations of the Colorado Consumer Protection Act); *Grady v. Swisher*, 2014 WL 3562794, at *18 (D. Colo. July 18, 2014) (finding that the paralegal's rate of $100 was reasonable in an action for violations of the United States Copyright Act of 1976 and the Lanham Act). However, the present case lacked the level of complexity that would warrant a rate at the top of the range. It did not involve convoluted facts or a novel case theory. Moreover, given that neither Defendant answered or entered an appearance in this matter, Plaintiff was relieved of the burden of proving the factual allegations supporting its claim. The straightforward nature of the litigation and the legal assistants' limited involvement in the case warrant an hourly rate of $175. Hence, the hourly rate of all three legal assistants will be reduced to $175.

Accordingly, the court finds that the lodestar amount is calculated as follows:

- Ms. Strong:        17.80 hours x $535/hr.= $9,523.00

- Ms. Kramer:        18.70 hours x $395/hr.= $7,386.50

- Mr. Collins:        1.10 hours x $175/hr.= $192.50

- Ms. Case:        0.30 hours x $175/hr.= $52.50

- Mr. Hannon:        1.20 hours x $175/hr.= $210.00

**Total:** $15,628.05  *($17,364.50 less 10% client courtesy discount of $1,736.45)*

The court finds this lodestar figure to reflect the reasonable fees in a case such as this one. Plaintiff has not argued that this lodestar figure should be adjusted upwards or downwards to reflect unusual circumstances, and thus, the court recommends reasonable attorneys' fees be awarded to Plaintiff in that amount.

Plaintiff also seeks reimbursement of its costs incurred in this action. Federal Rule of Civil Procedure 54(d)(1) provides that costs should be allowed to a prevailing party. Costs may be taxed under Rule 54(d) where they are authorized by federal statute. *Xtreme*, 958 F. Supp. 2d at 1260. Section 1117(a) provides that costs may be recovered for established violations of the Lanham Act. 15 U.S.C. § 1117(a).

In this action, Plaintiff is the prevailing party by virtue of Defendants' default. *See, e.g., J & J Sports Productions, Inc. v. Paz-Padilla*, 2013 WL 6002872, at *1 (S.D. Cal. Nov. 12, 2013) ("a plaintiff who obtains a default judgment may be considered a prevailing party for purposes of awarding fees and costs . . .") (citations omitted); *Local 881 United Food and Commercial Workers Union v. Food Club of Indiana d/b/a Valumart Foods,* 2011 WL 3501721, at *2–3 (N.D. Ind. Aug. 10, 2011) (awarding costs under Rule 54(d)(1) on default judgment); *St. Paul Fire & Marine Ins. Co. v. AVH Trucking LLC*, 2008 WL 4601771, at *5 (D. N.J. Oct. 15, 2008) (same). By the well-pleaded allegations and evidence, Plaintiff has established its claims of trademark infringement and unfair competition, as well as attorneys' fees. It has incurred $952.85 in compensable litigation costs, which consist of filing fees and service fees. [Doc. 30-2]. Therefore, pursuant to 15 U.S.C. § 1117 and Fed. R. Civ. P. 54(d), Plaintiff is also entitled to its costs.

## CONCLUSION

Accordingly, IT IS RECOMMENDED that:

1. Dun-Rite Home Improvements, Inc.'s Motion for Entry of Default Judgment (filed May 21, 2015) [Doc. 22] be GRANTED.

2. Default judgment be entered on the Complaint in favor of Plaintiff Dun-Rite Home Improvements, Inc. and against Defendants Dun-Rite, LLC and Jose Henriquez, jointly and severally, in the amount of $16,580.90 (consisting of $15,628.05 in attorneys' fees and $952.85 in costs).

3. Defendants, along with their principals, agents, servants, employees, successors, and assigns and all those in privity, concert, or participation with them be ENJOINED from:

   i.   imitating, copying, duplicating or otherwise making any use of DUN-RITE or any mark confusingly similar to DUN-RITE;

   ii.  manufacturing, producing, distributing, circulating, selling or otherwise disposing of any advertising material which bears any copy or colorable imitation of DUN-RITE;

   iii. using any unauthorized copy or colorable imitation of DUN-RITE in such manner as is likely to falsely relate or connect Defendants with Plaintiff;

   iv.  using any false designation of origin or false description which can or is likely to lead the trade or public, or individual members thereof, to mistakenly believe that any service advertised, promoted, offered or sold by Defendants is sponsored, endorsed, connected with, approved or authorized by Plaintiff;

     v.     causing likelihood of confusion or injury to Plaintiff's business reputation and goodwill, and to the distinctiveness of DUN-RITE by unauthorized use of the same;

     vi.     engaging in any other activity constituting unfair competition or infringement of DUN-RITE or Plaintiff's rights in, or to use, or to exploit the same; and

     vii.     assisting, aiding or abetting another person or business entity in engaging or performing any of the activities enumerated in subparagraphs (i) through (vi) above.

4.   Defendants and any principals, agents, servants, employees, successors and assigns of and all those in privity or concert with Defendants who receive actual notice of said order, be ORDERED to transfer the domain name "dunritedenver.com" to Plaintiff.

## ADVISEMENT TO THE PARTIES

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review." *United States v. Once Parcel of Real Prop. Known As 2121 East 30th Street, Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar de novo review by the district court of the magistrate judge's proposed findings and recommendations and will result in waiver of the right to appeal from a

judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (a district court's decision to review a magistrate judge's recommendation de novo despite the lack of an objection does not preclude application of the "firm waiver rule"); *One Parcel of Real Prop.*, 73 F.3d at 1059-60 (a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve the issue for de novo review by the district court or appellate review); *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Ref. Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the magistrate' judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the magistrate judge's ruling); *but see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

DATED at Denver, Colorado, this 2nd day of February, 2016.

BY THE COURT:

s/Craig B. Shaffer
United States Magistrate Judge